Re: Joseph N. Sanberg – Sentencing

April 2, 2026

Dear Honorable Judge,

I am writing to offer my perspective on the character of Joseph N. Sanberg in advance of his sentencing. I do so as someone who has suffered substantial financial loss arising from the conduct underlying this case, as described separately in my Victim Impact Statement, and whose family continues to live with the consequences.

I want to state clearly at the outset that I recognize the seriousness of the offenses to which Mr. Sanberg has pled guilty. I am not writing to dispute the validity of these proceedings or to minimize what occurred. I am writing because I believe that my long-standing, first-hand experience with Mr. Sanberg may assist the Court in assessing his character, his intent, and his capacity for rehabilitation, and in distinguishing grave mistakes from malice. This letter is offered solely for the Court's consideration at sentencing.

I have known Mr. Sanberg for over twenty-two years. We met through mutual connections in the Harvard alumni network, when I was founding a company in which Mr. Sanberg invested through his position at an investment firm. Over the years that followed, we worked closely together, including during the period when my company was listed on a foreign stock exchange. Mr. Sanberg served as the company's Chairman and I served as President.

Throughout those years, I interacted with Mr. Sanberg frequently through regular calls, meetings, and correspondence, and observed him operating under sustained pressure and scrutiny. In those professional interactions, I consistently experienced Mr. Sanberg as intellectually rigorous, mission-driven, and attentive to ethical considerations. He often emphasized long-term value creation, stakeholder responsibility, and compliance, and he served as a mentor to me through both growth periods and difficult moments, including the aftermath of the 2008 financial crisis.

One particular experience that shaped my view of Mr. Sanberg was our work together in establishing a new venture for my company in West Asia. The project involved partners from different countries, cultures, and political sensitivities, and required patience, transparency, and careful governance. Mr. Sanberg consistently emphasized alignment among stakeholders and long-term credibility over short-term gain. That experience left me

**Ex. A-11**

with the impression of someone striving to build institutions that could endure across difference, rather than exploit it.

Beyond business mechanics, Mr. Sanberg and I had many conversations about values and faith—not in a tribal or doctrinal sense, but in terms of universal obligations: justice, fairness, responsibility toward others, and the idea that success carries a duty to repair and contribute. In my experience, these conversations were sincere rather than performative. They were part of how he made sense of his role in the world and of the kind of legacy he hoped to leave.

I saw those values expressed most clearly in his work on Aspiration. From its earliest days, Mr. Sanberg spoke to me not simply about building a profitable financial institution, but about challenging practices he viewed as unfair to ordinary families and using finance as a tool for broader social good. When the company later expanded into environmental initiatives, that did not strike me as opportunistic. It was consistent with years of conversations in which he expressed genuine concern about environmental degradation and the responsibility of business leaders to address it. I believed in his sincerity in pursuing Aspiration's mission.

Over the years, I also observed Mr. Sanberg engage in philanthropic efforts and initiatives aimed at helping disadvantaged communities. While these activities do not excuse wrongdoing, they are relevant to my assessment of his intent. In more than two decades of knowing him, I never personally experienced him as someone motivated by greed, predation, or indifference to the harm of others.

On a personal level, I had the opportunity to see Mr. Sanberg interact with one of my children during a visit to Los Angeles, when he welcomed my family into his home. I watched him engage seriously and respectfully with a teenager interested in business and finance. Rather than glorifying success or wealth, he spoke about responsibility, ethical decision-making, and the long-term consequences of choices. That interaction mattered to me because it reflected how he thought about accountability across generations.

Mr. Sanberg also spoke to me, at times, about aspects of his childhood, including growing up without a consistently present father. I do not offer this as an explanation or excuse for his conduct. I mention it because he described it as shaping his desire to build institutions that could provide stability, fairness, and opportunity for others, particularly families. Whether or not he always pursued that ambition wisely, I believed it informed his sense of purpose rather than any intent to deceive or harm.

Consistent with this, I never observed Mr. Sanberg living a lavish or extravagant personal lifestyle. My point is not to minimize the harm caused or to suggest that financial

**Ex. A-11**

misconduct is acceptable if it is not spent on luxuries. Rather, it is to say that, in my experience, his failures appeared to arise from poor judgment under pressure and complexity, rather than from a pattern of personal excess or malice.

As set out in my Victim Impact Statement, my overriding priority is restitution. I respectfully submit that a sentence which preserves Mr. Sanberg's ability to engage in lawful, productive work and to make restitution over time would better serve victims and society than a sentence that forecloses that possibility.

I do not believe Mr. Sanberg poses a continuing threat to the public, and I believe he is capable of learning from this experience and acting differently going forward. I offer these reflections with respect for the Court and for the seriousness of this proceeding, and with the hope that they assist in reaching a sentence that balances accountability, rehabilitation, and practical justice.

Respectfully,

**Ex. A-11**