Marc L. Mukasey (*Pro Hac Vice*)
Torrey K. Young (*Pro Hac Vice*)
SEYFARTH SHAW LLP
620 Eighth Avenue, 32nd Floor
New York, NY 10018
Telephone: (212) 218-5500
Facsimile: (212) 218-5526
E-Mail: MMukasey@seyfarth.com;
TKYoung@seyfarth.com

Brian R. Michael (CA SBN 240560)
MORRISON FOERSTER LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, CA 90017
Telephone: (213) 892-5200
Facsimile: (213) 892-5454
E-Mail: BMichael@mofo.com

Attorneys for JOSEPH NEAL SANBERG

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JOSEPH NEAL SANBERG,<br><br>Defendant. | Case No. 2:25-CR-00200(a)-SVW<br><br>**DEFENDANT'S RESPONSE TO THE GOVERNMENT'S SUPPLEMENTAL SENTENCING POSITION**<br><br>Hearing Date: June 1, 2026<br>Hearing Time: 1:30 p.m.<br>Location: Courtroom of the Hon. Stephen V. Wilson |

JOSEPH NEAL SANBERG, through Counsel, hereby files his Response, with accompanying exhibits ("Ex."), to the Government's Supplemental Sentencing Position filed on May 11, 2026 (ECF No. 126) ("Supplemental Submission" or "Govt. Br."; exhibits attached thereto "Govt. Ex."). For the reasons set forth below and in Mr. Sanberg's previously filed Sentencing Memorandum (ECF No. 77), as well as in his other related filings and at the hearing held before this Court on April 27, 2026 (transcript of which is cited herein as "Tr."), Mr. Sanberg respectfully submits that a profound

downward variance, of unusual and special length, is required to do justice in this case and would result in a sentence that is sufficient, but not greater than necessary, to comply with the purpose of sentencing, as set forth in 18 U.S.C. § 3553(a).

Dated: May 27, 2026                              Respectfully submitted,

                                                 /s/ *Marc L. Mukasey*
                                                 MARC L. MUKASEY
                                                 TORREY K. YOUNG
                                                 Seyfarth Shaw LLP
                                                 620 8th Avenue, 32nd Floor
                                                 New York, NY 10018

                                                 and

                                                 /s/ *Brian R. Michael*
                                                 BRIAN R. MICHAEL
                                                 Morrison Foerster LLP
                                                 707 Wilshire Boulevard, Suite 6000
                                                 Los Angeles, CA 90017

                                                 Attorneys for Defendant
                                                 JOSEPH NEAL SANBERG

**DOJ HAS FAILED AGAIN TO ANSWER COURT'S QUESTIONS OR OFFER SUFFICIENT EVIDENCE TO SUPPORT EXTREME SENTENCING POSITION**

The DOJ has lost its way in this case.  Despite being granted a second opportunity to explain its request to imprison Joe Sanberg for nearly two decades, the DOJ has failed yet again to support its callous and unprecedented sentencing recommendation.  This DOJ, which has seen fit to *dismiss in full* cases against defendants charged with far worse misconduct (*see* Ex. B at 2-3 (summarizing dismissals and other inconsistencies with DOJ recommendation here)),[1] seeks a barbaric sentence for Joe Sanberg based on a Supplemental Submission replete with unsubstantiated and conclusory claims, glaring omissions, and reckless overstatements.

The DOJ's skewed position is that Joe Sanberg, who co-founded Aspiration in 2015 with CEO Andrei Cherny, is (i) *singularly responsible* for the company's bankruptcy in 2025, (ii) that *every investor* who lost money is a victim of Joe, and (iii) that the *sum total of investor losses* when Aspiration collapsed is entirely attributable to Joe.  Without question, losses suffered by investors are deeply unfortunate, and their impact is real, but the fact that they lost money does not make them *all* victims of Joe.

At the time Joe entered into his Plea Agreement, the DOJ produced to the defense a list titled "SANBERG FRAUD VICTIMS", which lists *only fourteen* "[k]nown victims who sustained actual loss under U.S.S.G. §2B1.1(b)(1)."  (Ex. C (victim list bearing DOJ bates stamp)).  It was the collective losses of these fourteen victims, as then-represented by the DOJ to the defense, that formed the basis of the specific loss amount agreed to in the Factual Basis accompanying the Plea Agreement.[2]  Notably, the DOJ's victim list was

---

[1] For ease of review, Defense Exhibit B, titled "Defense Responses," summarizes in a series of PowerPoint slides the many flaws with the DOJ's Supplemental Submission.

[2] As addressed in Joe's previously filed Sentencing Memorandum (ECF No. 77 at 13-14), and as reflected in the DOJ's April 22, 2026 restitution list, the Government subsequently received information that the loss amount for these fourteen victims is actually *at least $60 million less* than the figure set forth in the Factual Basis.

1

produced in 2025 at a time when many (if not all) Aspiration investors were known (or readily knowable) to the Government, including several that it now seeks – at the 11th hour – to belatedly characterize as "victims" of Joe's conduct, including, for example, ██████████████████████████████████████████████.[3] Justice does not permit the DOJ to unilaterally decide after the Plea Agreement was filed, and certainly not absent meaningful investigation or evidence (as discussed below), that these investors are *all* Joe's victims simply because they identified themselves as such during a post-plea solicitation by the DOJ to all investors for Victim Impact Statements. This heavy-handed effort by the DOJ, which continues unabated,[4] is not only baseless, but threatens to deprive Joe of the certainty and finality to which he is entitled under the Plea Agreement.

The DOJ also continues to ignore facts that obliterate the idea that Aspiration was Joe's alter ego and therefore that he should be singularly responsible for its bankruptcy, which, in any event, goes *well* beyond the Factual Basis agreed to here. Namely, (i) Joe was *never* an executive officer with any management or operational authority over Aspiration; (ii) Joe was *only* one of six directors on the board, and *only* for a *portion* of the time period applicable to his offense conduct; (iii) Joe *only* ever held a non-controlling *minority interest* in Aspiration, the vast majority of which he lost in May 2023 when UBS foreclosed on the shares he used as collateral for the loans secured with co-schemer Ibrahim AlHusseini's put option; and (iv) Aspiration did *not* file for bankruptcy until *nearly two years later* in March 2025.

---

[3] As the Court aptly noted after counsel for the third-listed investor addressed Your Honor at the April 27 hearing, this purported "victim" was *never* referenced in the Indictment or Factual Basis and, which the defense explained, had been *excluded* from the Plea Agreement by the parties. (Tr. 83-84). Remarkably undeterred, the Government has nonetheless included this investor *again* in its Supplemental Submission.

[4] On May 26 – the day before this filing is due – the DOJ filed *another 150* so-called Victim Impact Statements and attached documents, absent any analysis or verification, which DOJ has continued to solicit from all investors. (*See* ECF No. 128).

DEFENDANT'S RESPONSE TO THE GOVERNMENT'S SUPPLEMENTAL SENTENCING POSITION

The DOJ also closes its eyes to the fact that for many years after its founding in 2015, Aspiration was a growing, mission-driven company that offered banking, carbon credits, and other eco-conscious services resulting in the planting of *more than 100 million* trees (*see* https://www.prnewswire.com/news-releases/aspiration-plants-101-million-trees-with-eden-reforestation-projects-301735489.html), with multiple business lines and revenue streams, led by an experienced team of executives (including co-founder and CEO Cherny) and sophisticated board members (including AlHusseini). Even the DOJ's own exhibits make clear that the company was a fully-developed and operational company with a robust corporate structure.  (*See* Govt. Ex. 40 at 1, 6 (deck noting Aspiration was recognized among "World's 50 Most Innovative Companies" and "100 Most Brilliant Companies" and also listing extensive credentials for senior leadership and Board members)).  Simply put, the Government has not offered any documentary evidence, nor an expert witness, nor any other analysis sufficient to lay the bankruptcy of a multi-billion-dollar company – and all those hurt when they lost their investments – at the feet of one man.  Yet, the Government recklessly insists on designating every investor a Sanberg "victim."

Notwithstanding the Government's unsubstantiated allegations as to the size and scale of Joe's LOI subsidies (*see* Ex. B at 12 (chart showing how DOJ's LOI claims are *not* supported by evidence)), that admitted conduct is likewise insufficient to turn every Aspiration investor into a Sanberg victim.  The Government's assumption appears to be that Aspiration was a public company with regularly distributed, publicly available financials such that every investor could be said to have at least received inaccurate financials during the period of Joe's LOI payments.  But the Government has presented no evidence of such regular distribution, nor is there any.  That is because Aspiration was a *private* company, not public, and the Government has failed to establish that somehow every actual or potential investor even received—let alone relied on—any financials.

DEFENDANT'S RESPONSE TO THE GOVERNMENT'S SUPPLEMENTAL SENTENCING POSITION

Furthermore, the Government appears to have disregarded the Court's prior admonishment not to conduct further investigation in connection with its Supplemental Submission because, as the Court explained, to do so "would be unfair."  (Tr. at 79-80). To refresh the Court: on April 27, Joe Sanberg appeared for sentencing, having pleaded guilty pursuant to the terms of his Plea Agreement and accepted responsibility for having engaged in unlawful efforts to try to save Aspiration, as described in the accompanying Factual Basis.  Genuinely remorseful and broken, but committed to doing whatever he can to make amends, Joe was prepared to be held accountable for his misconduct, including the impact on his *actual* victims and the losses *properly* attributable to him. However, after nearly two hours of inquiry by the Court, directed largely to the Government, the Government was ordered to submit supplemental sentencing materials and the Court continued Joe's sentencing to June 1, 2026.

Specifically, the Court directed the Government as follows:

THE COURT: I'm not going to sentence him now because I don't have the picture that I ought to have. I've asked a lot of questions. I've gotten a lot of answers. I want -- the Government does have the burden of at least persuading me by whatever level of proof is required here and -- I want to know answers to these questions. I mean, I hope you've been taking notes. I want answers. **I want a new sentencing memorandum with exhibits, with declarations, under penalty of perjury**, and I want to give the defense an opportunity to respond to those. So we're starting a new phase of the sentence.

(Tr. at 78-79 (emphasis added)).  When defense counsel rightly expressed concern that this would give the Government an opportunity to do the investigation that should have already been done to "fill in blanks," the Court further directed as follows:

THE COURT: Well, no.  I'm going to put a caveat on it. **This is not a new investigation**. I want your answers to be what you know from your investigation, what your agent, what your resources, what your file says. I'm not opening up the investigation.

MR. STEMPEL: Yes, Your Honor.

4

THE COURT: **That would be unfair**.

(Tr. at 79-80 (emphasis added)).  The Court then reiterated:

THE COURT: **No new interviews, no new victims -- nothing**. Just what you know now.

(Tr. at 80 (emphasis added)).

In apparent disregard of the Court's unequivocal mandate not to conduct further investigation, ("No new interviews, no new victims"), the DOJ has *done just that*.  The day after the April 27 hearing, the Government sent a letter via mass email distribution to the entire Aspiration investor pool and solicited them to appear as "victims" and speak at the upcoming June 1 sentencing hearing.  (*See* Ex. D (DOJ solicitation)).  In addition, the DOJ's Supplemental Submission cites to a report of an FBI interview conducted two days after the April 27 hearing (Govt. Ex. 70), at least one Victim Impact Statement received after the hearing (Govt. Ex. 55), and six exhibits (Govt. Exs. 39, 59, 66-69) produced to the defense for the first time *after* the Government filed its Supplemental Submission on May 11.  It is stunning that the Government believes this is appropriate, having already been admonished by the Court that to do so "would be unfair."  Equally stunning and prejudicial is that a former DOJ prosecutor *who was involved in this case* appeared on a popular podcast on May 5 to offer commentary about sentencing in this case while it is still pending.  (*See* https://www.pablo.show/p/the-dojs-aspiration-prosecutor-joins).

Setting aside how inappropriate this all is given the Court's admonitions, the Government's current offering *still* falls short of providing evidentiary support, verification, forensic accounting or other meaningful analysis necessary to address sufficiently the Court's pending inquiries and to justify the draconian sentence it seeks. The Government still leaves unanswered or inadequately addresses a vast array of the Court's questions on key issues, while mischaracterizing, overstating, or ignoring facts critically relevant to a determination of the appropriate sentence under § 3553(a).  *See*

5

DEFENDANT'S RESPONSE TO THE GOVERNMENT'S SUPPLEMENTAL SENTENCING POSITION

*United States v. Garcia-Sanchez*, 189 F.3d 1143, 1149 (9th Cir. 1999) ("The government is obliged to present sufficient reliable evidence to support its sentencing recommendations. . . . The district court had . . . an independent obligation to ensure that the sentence was supported by sufficient reliable evidence.").

The Government also continues to rely on generalized and conclusory assertions, absent support from declarations submitted under penalty of perjury as directed by the Court, other than a single declaration from an FBI agent merely identifying the sources for nearly 70 exhibits.[5]  Of particular note, despite touting this agent's credentials as a licensed Certified Public Accountant and Certified Fraud Examiner on the Complex Financial Crime squad who previously served as an FBI Forensic Accountant, the declaration offers *no forensic accounting or other analysis*.  Instead, the Government has thrust upon the Court a document dump comprised of nearly two thousand pages to rifle through to try to evaluate and understand their significance (or lack thereof), including:

- Investigative reports documenting *unsworn* proffer interviews replete with self-serving and unverified statements from (i) Aspiration co-founder and CEO Cherny (Govt. Ex. 2) and (ii) cooperating co-schemer (and admitted perjurer) AlHusseini (Govt. Ex. 46);

- Unauthenticated images and communications lacking metadata, forensic analysis, or independent verification produced by AlHusseini, including (i) handpicked copies of "screen shots" of text message excerpts, and select emails, apparently depicting self-serving exchanges he had with Joe, that omit any other portion of their extended electronic communications (Govt. Exs. 5, 6, 10-15), and (ii) a copy of a photo supposedly taken by AlHusseini of Joe sitting with a man identified as the graphic designer AlHusseini solicited to create falsified records of his bank accounts (Govt. Ex. 7), whom the Government has admitted it never interviewed (Tr. at 28);

---

[5] Although unaddressed in its Supplemental Submission, for some reason the Government has not submitted or cited to Exhibits 4, 8, 29, 30, 62, 64, 65.

6

- Voluminous assortment of bank records for multiple accountholders, including Joe and many others, depicting numerous transactions, yet lacking any forensic accounting or other meaningful analysis (Govt. Exs. 31-38, 66-69);

- An Excel spreadsheet produced in native format by Aspiration of what appears to be company financial data (Govt. Ex. 39) and two Aspiration presentations produced, respectively, by a financial institution and an unspecified individual (Govt. Exs. 40, 41) purporting, in the Government's view, to help establish the total amount of LOIs and the materiality of related revenue attributable to Joe's misconduct, *yet lacking indicia of any* further investigation, verification, forensic accounting or other meaningful analysis sufficient to establish critical context and facts, including when these materials were created and by whom, the accuracy or completeness of the information therein, who reviewed or relied upon these materials, and for what purpose and by whom these materials were used.

- Multiple Victim Impact Statements, some with a handful of attached documents, which the Government solicited from *every* Aspiration investor based on a faulty presumption that all investors are victims in this case (Govt. Exs. 20, 44, 50, 53-56, 59, 60), unaccompanied by further discovery and lacking indicia of any further investigation, verification, forensic accounting or other meaningful analysis sufficient to establish if the authors are in fact properly deemed victims here (which is not intended to diminish the significance or pain of their losses) – including investors *known to the Government* when the Plea Agreement was entered, but *not* included on the Government's Victim List.[6]

It cannot be that the Government fulfills its burden at sentencing in a fraud case by merely dumping its case file on the Court or through an "investigation-by-survey" approach. But that is what the Government seeks to do here by also relying extensively on Victim Impact Statements sought by the Government in a self-fulfilling manner from the entire Aspiration investor pool, and thereafter attributing their losses to Joe absent further investigation, verification, forensic accounting or other meaningful analysis, much less any additional discovery to support their claims. Allowing this would unfairly enable the Government to offer virtually any information provided by any investor post-

---

[6] As noted above, this includes an investor that was *never* referenced in the Indictment or Factual Basis, and which had specifically been *excluded* from the Plea Agreement.

plea as proven fact, without further inquiry substantiating the "who, what, when, where, how" they invested in reliance on false information purportedly provided by Joe.  This falls well short of the preponderance standard required of the Government at sentencing.

In addition to these shortcomings, upon closer review, many of the Government's exhibits actually undercut their claims, while also confirming multiple misstatements and glaring omissions such as (i) the collateral and recoveries associated with the UBS loans and other Aspiration lenders and investors, (ii) records of investors stock purchases/sales and ownership interests, (iii) and the many disclaimers made to investors, all of which are highly relevant to the matters at hand.

With regard to the LOIs, the Government offers a cursory and speculative financial analysis, apparently conducted by layperson prosecutors and not accountants, regarding the volume of LOIs and the revenue attributable to Joe, the alleged materiality thereof, and the supposed impact on the company, while offering no analysis or insight regarding the company's other business lines, revenue streams, or relevant circumstances at the time.  (*See* Ex. B at 12 (chart showing how DOJ's LOI claims are *not* supported by evidence)).  The Government also fails to fully address the Court's queries regarding the UBS loans, including AlHusseini's role, his assets, and the flow of funds derived from the UBS loans, as well as how much more went to AlHusseini as compared to Joe, relying primarily on AlHusseini's unsworn, untested, and self-serving assertions and, once again, layperson prosecutors' financial analysis.  (*See* Ex. A at 1-2 (summary of Court's questions still unanswered by DOJ regarding AlHusseini)).[7]

Given the lack of sufficient evidence or analysis offered by the Government, it would be profoundly unfair to sentence Joe Sanberg based on every investor and every loss associated with Aspiration's demise, or to disregard evidence significantly mitigating Joe's culpability.  Just as it is unfair for the Government to blame Joe alone for the many

---

[7] For ease of review, Exhibit A presents in chart format the DOJ's continued failure to respond adequately to *more than a dozen questions* posed by the Court on April 27.

8

reasons why Aspiration went bankrupt. Just as it is unfair for the Government to cynically claim that Joe has not accepted responsibility for his crimes despite his swift guilty plea to conduct well beyond the charges in the initial charging instrument, his genuine remorse, and his sustained efforts to make amends. Just as it is unfair for the Government to sarcastically mock Joe's "rosy view of himself" and falsely portray him as some sort of serial Ponzi-like fraudster who "stole" investors' money despite admitting that it has done nothing to understand Joe's uncontroverted philanthropic record (Tr. at 40), including (i) multiple statements of support from highly-credible individuals previously submitted to the Court, (ii) the extraordinary impact of Joe's many years of anti-poverty work previously described by the Defense, (iii) how Joe put virtually his entire life savings *into* Aspiration and wasn't living extravagantly, which is unrefuted, or (iv) the legitimacy and accomplishments of Aspiration's business, which continues today at successor entities in which many investors maintain an interest. (*See* Ex. B at 10 (summarizing key mitigating facts ignored by DOJ)).[8]

Notwithstanding the DOJ's gross overstatement of the nature and scope of Joe's misconduct, rampant mischaracterization of the evidence and his relative culpability, and sustained failure to even acknowledge extensive mitigating facts, Joe has remained focused on being the sole caretaker for his elderly mother, whose health has deteriorated. He has continued to work at a paying job tutoring English-as-second language to high school students. And he remains steadfast in taking responsibility for his actions and having a positive community impact.

We urge the Court to consider a sentence that places Joe's relative culpability into proper context by taking into account the full picture of his actions, good and bad, and

---

[8] For example, the DOJ ignores that Aspiration sold its consumer banking business in 2024 (*see* https://www.greenfi.com/resources/aspirations-next-steps), which *continues to operate* today as GreenFi bank (www.greenfi.com), and that many investors continue to hold a substantial interest in GreenFi's ongoing value. (*See* Ex. B at 10; *see also* Ex. K at 6 (October 2024 deck describing continued operations of Aspiration's financial services)).

DEFENDANT'S RESPONSE TO THE GOVERNMENT'S SUPPLEMENTAL SENTENCING POSITION

how for years he poured everything he had into helping Aspiration fulfill its eco-conscious business mission, but then strayed in a desperate effort to save the company. What is fair is a sentence that considers the *entirety* of the life Joe Sanberg has lived, and that he has yet to live, now utterly penniless with his reputation in tatters, but with genuine remorse and a resolute desire and ability to continue making amends, to pay restitution, and to atone for his misdeeds.[9]

Dated: May 27, 2026                    Respectfully submitted,

                                        /s/ *Marc. L. Mukasey*
                                       MARC L. MUKASEY
                                       TORREY K. YOUNG
                                       Seyfarth Shaw LLP
                                       620 8th Avenue, 32nd Floor
                                       New York, NY 10018

                                       and

                                        /s/ *Brian R. Michael*
                                       BRIAN R. MICHAEL
                                       Morrison Foerster LLP
                                       707 Wilshire Boulevard, Suite 6000
                                       Los Angeles, CA 90017

                                       Attorneys for Defendant
                                       JOSEPH NEAL SANBERG

---

[9] Although not ordered here, the Government has informed the defense that it may submit a reply to this response.  Having already been given *two* chances to explain its position, it would be unfair to allow the Government a *third* bite at the apple.  *See United States v. Rowe*, 919 F.3d 752, 762-63 (3d Cir. 2019) ("At sentencing, the government bears the burden of proof by a preponderance of the evidence, and ordinarily is only afforded one opportunity to carry its burden.") (citations omitted).  The defense respectfully requests that the Court deny any such effort and/or, if filed, strike the Government's reply.

10

DEFENDANT'S RESPONSE TO THE GOVERNMENT'S SUPPLEMENTAL SENTENCING POSITION