TODD W. BLANCHE
Acting Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
ALEXANDER B. SCHWAB
Acting Chief, Criminal Division
NISHA CHANDRAN (Cal. Bar No. 325345)
Assistant United States Attorney
Major Frauds
        1100 United States Courthouse
        312 North Spring Street
        Los Angeles, California 90012
        Telephone: (213) 894-2429
        Facsimile: (213) 894-0241
        E-mail:    Nisha.Chandran@usdoj.gov

LORINDA I. LARYEA
Chief, Fraud Section
Criminal Division, U.S. Department of Justice
THEODORE M. KNELLER (D.C. Bar No. 978680)
ADAM L.D. STEMPEL (D.C. Bar No. 1615015)
Trial Attorneys
U.S. Department of Justice
        1400 New York Avenue, NW
        Washington, DC 20530
        Telephone: (202) 514-5799
        Facsimile: (202) 514-3708
        Email: Theodore.Kneller@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>                v.<br><br>JOSEPH NEAL SANBERG,<br><br>                Defendant. | No. CR 2:25-CR-200-SVW<br><br>GOVERNMENT'S REPLY TO DEFENDANT'S RESPONSE TO THE GOVERNMENT'S SUPPLEMENTAL SENTENCING POSITION DECLARATION OF ADAM L.D. STEMPEL; EXHIBITS<br><br>Hearing Date: June 1, 2026<br>Hearing Time: 1:30 p.m.<br>Location:    Courtroom of the Hon.<br>                 Stephen V. Wilson |

Plaintiff United States of America, by and through its counsel of record, Assistant United States Attorney Nisha Chandran, United States Department of Justice Fraud Section Chief Lorinda I. Laryea,

Trial Attorneys Theodore M. Kneller and Adam L.D. Stempel, hereby files its reply to defendant Joseph Neal Sanberg's Response to the Government's Supplemental Sentencing Position (Dkt. 134, "Response"), filed May 27, 2026.

Dated: May 29, 2026                Respectfully submitted,

                                   BILAL A. ESSAYLI
                                   First Assistant United States
                                   Attorney

                                   ALEXANDER B. SCHWAB
                                   Assistant United States Attorney
                                   Acting Chief, Criminal Division

                                   LORINDA I. LARYEA
                                   Chief, Fraud Section
                                   U.S. Department of Justice

                                   _____/s/_____
                                   ADAM L.D. STEMPEL
                                   THEODORE M. KNELLER
                                   NISHA CHANDRAN
                                   Attorneys for Plaintiff

                                   Attorneys for Plaintiff
                                   UNITED STATES OF AMERICA

2

**I.    DEFENDANT SANBERG CANNOT DISCLAIM THE VICTIMS OF HIS FRAUD**

Having committed – and pleaded guilty to – a massive scheme to defraud lenders and investors of hundreds of millions of dollars over a five-year period, defendant Joseph Sanberg cannot now pick and choose his victims to avoid full accountability for his own conduct. In his preferred scenario, Sanberg would only be held accountable for his fraud against 14 victims whose estimated losses at the time of plea negotiations total to the loss amount of at least $248,703,886. To be sure, these individuals and entities are victims of his fraud but, as Sanberg knows and as the government has made clear since well before the plea agreement was entered, they are far from the only ones.

All the victims the government discusses in its Supplemental Sentencing Position, from the 80-year-old widow to the single mother to the multi-millionaires, are victims of Sanberg's fraud and are appropriate to be considered for sentencing. And contrary to Sanberg's repeated efforts to characterize these victims as merely bankruptcy claimants, many of these victims are individuals whom Sanberg personally solicited, often with falsified documents. Under the Mandatory Victim Restitution Act ("MVRA"), the Crime Victims' Rights Act ("CVRA"), and principles of justice, it is not appropriate to discount their victimization in fashioning a just sentence.

   **A.    The Government Has Consistently Informed Sanberg of the Scope of the Victims of his Crimes**

The government's position that <u>all</u> the people Sanberg defrauded are victims may be unwelcome to Sanberg, but it cannot come as a surprise. Pursuant to its statutory obligations under the CVRA and MVRA, the government has collected over 150 statements from victims,

which it has produced to defense counsel on a rolling basis. The government will continue to receive and process victim statements, consistent with those obligations. But the government did not make these people victims – Joseph Sanberg did.

Sanberg's assertion that the government has ever maintained that there were only 14 victims in the case is incorrect. On June 1, 2025, more than two months before Sanberg signed the plea agreement, the government identified to Sanberg's counsel a "non-exhaustive list of victims" including 17 names, to support Sanberg's eventual admission that his fraud "involved 10 or more victims." (Declaration of Adam L.D. Stempel ("Stempel Decl."), Exhibit A.) In the same email, the government stated that most investors in AGO Special Situations Credit LP and AGO Special Situations LP would likely also be considered victims, totaling over 150 individuals. (Stempel Decl., Exhibit A.)[1] Further, the government stated that most of the equity holders in the company formerly known as Aspiration may also be victims. (Stempel Decl., Exhibit A.)

One of the individuals identified by the government in June 2025 was ██████████, who addressed the Court at the April 27 sentencing hearing and who Sanberg now claims the government "seeks – at the eleventh hour – to belatedly characterize as 'victims'" of Sanberg. (Response at 2.) ██████████ victim impact statement was produced to defense counsel in February 2026, and his name was also listed on a preliminary restitution list provided to defense counsel in March 2026. At the April 27 hearing, ████████ addressed the Court and

---

[1] A list of AGO partnership investors was distributed by Sanberg's own civil attorney and forwarded to the government by a victim. (Stempel Decl., Exhibit B.)

explained how he had lost $90,000 from Sanberg's fraud. Sanberg then took the lectern to simultaneously acknowledge █████ and others as victims, and lie to the Court about his interactions with them.

> THE DEFENDANT: What I'd like to say to both of the people who spoke, who I care about, is I've wanted to reach out to you and others to apologize and tell you how committed I am to doing everything to make right by you, but I've been restricted by my bail restrictions from having communications, and I've been vigilant to be perfectly compliant with those bail restrictions. And so I just want to use this moment to say to those here and not here, whom I've hurt, whom I haven't been able to reach out to because of those bail restrictions ....

(Tr. at 92, lns. 5-21.) █████ approached the Court again to report Mr. Sanberg's false statements to the Court:

> █████: Mr. Sanberg said that he has not been able to communicate with people since his bail agreement. That's not the case because he has been in communication with me since then. . . . And attempted to, I believe, influence my witness -- my victim statement.

(Tr. at 97, lns. 18 – 25.) Immediately following the hearing, an FBI agent spoke to █████ and obtained a copy of several text messages Sanberg sent to █████ that reflect Sanberg's understanding that ██ ██ was a victim.[2] (See Dkt. 124, Exhibit 70.) These text messages were sent while Sanberg was on pretrial release. Sanberg's objection to █████ victim status is therefore further undermined by his own behavior.

**B.    Sanberg's Plea to the Factual Basis Facially Encompasses a Wide Range of Victims**

Even if Sanberg imagines that he had not been told that there were more than 100 victims of his conduct, the conduct must still be

---

[2] The government does not view this brief conversation with a victim who has specific rights under the MVRA and CVRA about an apparent violation of Sanberg's release conditions as contrary to the Court's admonishment not to carry out further investigation.

taken into account at sentencing. This is not least because Sanberg explicitly admitted that he fraudulently induced investors to purchase securities related to Aspiration, including by sending them false representations that overstated Aspiration's value and assets. (Dkt. 43, Factual Basis, ¶¶ 27, 41-42.) These admissions squarely describe Sanberg's fraud on many investors in the AGO limited partnerships he personally controlled and whom he solicited with falsified financial statements and valuation reports. Sanberg's attempts to disclaim victims of the very conduct he admitted in the factual basis to the plea agreement is bizarre.

The victim impact statements demonstrate that the victims who lost money in Sanberg's AGO partnerships were not giant venture capital funds that invested directly in Aspiration. Rather, they were individuals who had personal contact with Sanberg himself and whom he personally induced to invest or maintain their investment even though Sanberg knew Aspiration's revenue was materially false (Dkt. 43, Factual Basis, ¶¶ 39-40).

Likewise, the Court need not find that Sanberg was solely responsible for Aspiration's collapse to find that those investors who relied on misrepresentations about Aspiration's revenue, value, and cash were defrauded by Sanberg, who caused those misrepresentations. Aspiration declared bankruptcy just weeks after Sanberg could no longer fund the company through fraud.

C.    **Sentencing Considerations Go Beyond the Factual Basis**

At the April 27 hearing, defense counsel objected to allowing Sanberg's victims to speak at the hearing, despite their right to be heard at sentencing under the CVRA (18 U.S.C. § 3771(a)(4)):

4

MR. MUKASEY: Your Honor, I'm going to just very politely object because you don't get to choose, you know, whether you can fit yourself into this factual basis. The factual basis had discrete victims and discrete loss amounts. Not everybody who lost money is a victim of Joe Sanberg, period.

(Tr. at 85, lns. 16-21.) In overruling defense counsel's objection and permitting the victims to speak, the Court corrected defense counsel and noted that these victims "may be beyond the scope of the factual basis, but they may be relevant conduct."  (Id. at 91, lns. 20-21.)

Plainly so. Section 1B1.3 of the United States Sentencing Guidelines allows the Court to consider all relevant conduct to the offense of conviction, which includes "all acts and omissions . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction." See also United States v. Newbert, 952 F.2d 281, 283 (9th Cir. 1991) (Guidelines mandate consideration of "a broad range of conduct" for fraud offenses). The factual basis does not cabin off Sanberg's conduct from the Court's consideration of the relevant scope of his crimes.

Sanberg wants the Court to ignore the actual people whom he victimized. Sanberg hopes the Court will not focus on victim ███ ████, who lost her $100,000 investment of the money she received from her husband's life insurance policy when he died by suicide in Iraq. (Dkt. 114 at 20.) Or victim █████████, a single mother who lost $920,000 when Sanberg stole her investment for his own personal use. (Id. at 5, 15.) Or victim █████████, an 80-year-old widow who sent Sanberg $500,000 for stock she never got. (Id. at 18.) At sentencing, the Court may and should consider Sanberg's conduct with respect to these victims and the many others who have come forward to

tell their stories.

## II.  CONCLUSION

For the foregoing reasons and for the reasons set forth in the government's papers in this case, the government recommends that the Court sentence defendant Joseph Sanberg to 212 months in prison.[3] The government's recommendation is not "callous" or "barbaric," as Sanberg suggests. (See Dkt. 134 at 1.) To the contrary, it is Sanberg's conduct that was callous and indifferent to his victims, and the government's Guidelines sentencing recommendation is appropriate and consistent with the plea agreement, the facts in this case, and the interests of justice under the law.

---

[3] In a footnote at the end of Sanberg's Response, Sanberg preemptively objects to the government filing this reply, citing United States v. Rowe, 919 F.3d 752, 762-63 (3d Cir. 2019). Once again, Sanberg's arguments are mislaid.  Unlike the posture here, Rowe was about preventing the government from developing a new factual record on remand. Id. at 762 ("What remains is the parties' dispute about whether, on remand, the Government should be permitted to develop the record on the drug weight issue."). The government files this reply to correct and complete the record and provide the Court with the appropriate context needed to pass an appropriate and just sentence in this case.

6