TODD W. BLANCHE
Acting Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
JENNIFER L. WAIER
Assistant United States Attorney
Chief, Criminal Division
NISHA CHANDRAN (Cal. Bar No. 325345)
Assistant United States Attorney
Major Frauds
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2429
     Facsimile: (213) 894-0241
     E-mail:    Nisha.Chandran@usdoj.gov

LORINDA I. LARYEA
Chief, Fraud Section
Criminal Division, U.S. Department of Justice
THEODORE M. KNELLER (D.C. Bar No. 978680)
ADAM L.D. STEMPEL (D.C. Bar No. 1615015)
Trial Attorneys
U.S. Department of Justice
   1400 New York Avenue, NW
   Washington, DC 20530
   Telephone: (202) 514-5799
   Facsimile: (202) 514-3708
   Email: Theodore.Kneller@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>            v.<br><br>JOSEPH NEAL SANBERG,<br><br>            Defendant. | No. CR 2:25-CR-200-SVW<br><br>GOVERNMENT'S POSITION REGARDING RESTITUTION; DECLARATION OF TRISTAN LOZANO; EXHIBIT<br><br>Hearing Date: July 20, 2026<br>Hearing Time: 11:00 a.m.<br>Location:    Courtroom of the Hon.<br>            Stephen V. Wilson |

    Plaintiff United States of America, by and through its counsel of record, Assistant United States Attorney Nisha Chandran, United States Department of Justice Fraud Section Chief Lorinda I. Laryea,

Trial Attorneys Theodore M. Kneller and Adam L.D. Stempel, hereby files its position regarding restitution in the above-captioned case.

This position regarding restitution is based upon the government's previously filed sentencing position, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: July 8, 2026                      Respectfully submitted,

                                         BILAL A. ESSAYLI
                                         First Assistant United States
                                         Attorney

                                         JENNIFER L. WAIER
                                         Assistant United States Attorney
                                         Chief, Criminal Division

                                         LORINDA I. LARYEA
                                         Chief, Fraud Section
                                         U.S. Department of Justice

                                         _____/s/_____
                                         THEODORE M. KNELLER
                                         ADAM L.D. STEMPEL
                                         NISHA CHANDRAN
                                         Attorneys for Plaintiff

                                         UNITED STATES OF AMERICA

2

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

**I.    INTRODUCTION**

Joseph Sanberg perpetrated a massive, multi-year fraud scheme, affecting well over a hundred victims and causing hundreds of millions of dollars in losses. He pleaded guilty to two counts of wire fraud charged in a superseding information that laid out the broad scope of the scheme to defraud numerous lenders and investors between 2020 and his arrest in 2025. Dkts. 41 (Superseding Information), 43 (Plea Agreement and Factual Basis). On June 1, 2026, this Court sentenced Sanberg to 14 years in prison, noting that "the circumstances of the offense are among the worst I've ever encountered in the time that I have served here, which is now 40 years." Tr. of June 1, 2026 Sentencing Hearing ("Tr.") at 49, lns. 9-11. At the request of the parties, the issue of restitution was deferred to July 20, 2026. Dkt. 85.

The Court should now order full restitution in the amount of $323,231,279.01, pursuant to the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A, to compensate the victims of the defendant's scheme.

**II.   PROCEDURAL HISTORY**

**A.    The Charges and the Plea Agreement**

Sanberg was charged in a Superseding Information with a "scheme to defraud lenders and investors . . . by means of false pretenses, representations, and promises, and the concealment of material facts." Dkt. 41, ¶ 6. The Superseding Information also alleged the means of the scheme, including that Sanberg "sent and caused to be sent to prospective and current lenders and investors materially false and fraudulent representations, including about defendant

SANBERG's assets; [Aspiration's] revenue, debt, available cash, and valuation; and Co-Schemer AlHusseini's assets;" as well as that Sanberg made and caused false representations regarding Aspiration's financial health to induce investors to invest in Aspiration, purchase Sanberg's shares of Aspiration, and pool investments to purchase debt of Aspiration. Id., ¶ 7. The Superseding Information charged two specific instances of wire fraud that Sanberg committed in furtherance of the broader scheme – one relating to the fraudulent revenue that Aspiration booked, and one relating to misrepresentations sent to potential lenders and investors about Aspiration's assets. Id. ¶ 9.

Sanberg pleaded guilty to both counts. Dkt. 43. In a detailed factual basis, Sanberg admitted that he participated in a scheme to defraud lenders and investors. Id. at Attachment A (Factual Basis), ¶ 13. He agreed that he had defrauded specific lenders, and also that he had caused Aspiration's revenue to be falsely inflated, and misrepresented Aspiration's revenue and cash to induce investments in Aspiration stock and other assets. Id. ¶¶ 14-26, 27. Sanberg further admitted that there were 10 or more victims of the fraud and that victim losses were at least approximately $248,703,886. Id. ¶ 46.

As part of the terms of the plea agreement, Sanberg agreed that he would be required to pay "full restitution to the victim(s) of the offenses to which defendant is pleading guilty." Dkt. 43, ¶ 8. Sanberg also acknowledged that "the Court may order restitution to persons other than the victim(s) of the offenses to which defendant is pleading guilty and in amounts greater than those alleged in the counts to which defendant is pleading guilty," and in particular that the Court may order restitution for losses from any relevant conduct.

2

Id. Although the parties estimated restitution at $248,703,886 at the time of the plea agreement, Sanberg specifically acknowledged that "this amount could change based on facts that come to the attention of the parties prior to sentencing." Id.

**B.    Victim Submissions**

Between Sanberg's arrest on March 3, 2025, and his sentencing on June 1, 2026, the government received more than 150 submissions from individuals and entities claiming that they had been victims of the fraud scheme. Declaration of Tristan Lozano ("Lozano Decl."), ¶ 6. The government filed these submissions under seal on May 26, 2026, Dkts. 139–43, and filed a supplemental batch of submissions on July 8, 2026. See Dkt. 167. Although some submissions did not appear to relate to the charged fraud scheme, the vast majority of victim impact statements described how the victim had lost money in connection with Aspiration and Sanberg's fraud. Some additional victims spoke to law enforcement directly.

On April 22, 2026, in advance of the first sentencing hearing, the government filed under seal a preliminary restitution list, disclosing an estimated $323,409,014 in victim losses across more than 100 victims. Dkt. 83. This figure was higher than the $248,703,886 estimated in the plea agreement because many additional victims had come forward. Since the filing of the preliminary restitution list, additional victims have made claims, and (as explained below) the government has excluded certain claims based on the Court's statements.

**C.    Sentencing**

The Court held two sentencing hearings in this case, one on April 27, 2026, and one on June 1, 2026. During the two sentencing

3

hearings, multiple victims and victim representatives gave statements and discussed the extent of their losses. The Court specifically noted as to the victims that it was considering "any impact statements that relate to the time period of the indictment." Tr. at 6, lns. 15-16.

The Court sentenced Sanberg to 14 years in prison. It observed that the case "has touched almost every badge of fraud." Tr. at 49, ln. 12. In addition to the fraud on the major lenders and the creation of false revenue at Aspiration, the Court made note of other modes by which Sanberg defrauded victims, including by not recording the transfer of stock he sold, and selling interest in a debt instrument he did not own. Id. at 50, lns. 7-10. The Court further commented that Sanberg "hurt a lot of people," and concluded by grading the severity of the fraud "at the zenith." Id. at 50, ln. 22; 51, ln. 12.

**III. THE GOVERNMENT'S RESTITUTION PROPOSAL**

Pursuant to the MVRA, the Court should enter a restitution order in the amount of $323,231,279.01, awarded to the claimants identified in Exhibit A to the Declaration of Tristan Lozano.

**A.    Legal Standard**

The Mandatory Victims Restitution Act, 18 U.S.C. § 3663A(a)(1), requires that "[n]otwithstanding any other provision of law, when sentencing a defendant convicted of an offense described in subsection (c), the court shall order . . . that the defendant make restitution to the victim of the offense."  In addition, "[t]he court shall also order, if agreed to by the parties in a plea agreement, restitution to persons other than the victim of the offense."  18 U.S.C. § 3663A(a)(3).

4

Section 3664(e) requires that the Court shall resolve any disputes as to the proper amount or type of restitution by a preponderance of the evidence, with the burden of demonstrating the amount of loss sustained being on the government. 18 U.S.C. § 3664(e). This requirement has been interpreted to mean that "when there is a dispute as to restitution, a restitution order must be supported by evidence in the record showing that it is more likely than not that the defendant's offense proximately caused the losses for which restitution was awarded and that it did so in the amounts awarded." United States v. Tsosie, 639 F.3d 1213, 1221-22 (9th Cir. 2011). Notably, the "[d]efendant's conduct need not be the sole cause of the loss" for a victim to qualify for restitution, so long as intervening causes are "directly related to the defendant's conduct. The causal chain may not extend so far, in terms of the facts or the time span, as to become unreasonable." United States v. Peterson, 538 F.3d 1064, 1075 (9th Cir. 2008) (quoting United States v. Gamma Tech Indus. Inc., 265 F.3d 917, 927 (9th Cir. 2001)).

**B.    The Victims in the Case**

The government has received more than 150 statements from individuals and entities asserting that they are victims of the offense conduct and relevant conduct in this case. Some of the victims are major institutional investors and lenders; many more are individuals investing their own money. The government has discussed in prior briefing that certain of these victims suffered substantial financial hardship. See, e.g., Dkt. 91 at 3-5; Dkt. 126 at 15-22. The government will not repeat its argument except to note that the Court found the Sentencing Guidelines calculation in the revised Presentence Report, which denied Sanberg the two-level zero-point

offender reduction because he had personally caused substantial financial hardship, to be "correctly computed." Tr. at 49, lns. 19-20. In total, these individuals and entities asserted more than $405 million owed in restitution. And, as previously noted, the government is aware of other individuals and entities, like ███████████ ███████, that lost money in the scheme but have not asserted claims to restitution. E.g., Dkt. 126 at 28, 28 n.2.

**C.    Criteria for Restitution**

Based on the requirements of 18 U.S.C. § 3664, and on the statements of the Court at sentencing, the government has identified a set of criteria to determine eligible restitution claims. See Lozano Decl., ¶ 8. To be included in the government's restitution proposal, claimants must have:

1) Provided money (in the form of an investment or loan) to Aspiration Partners (or its successor entities) or Joseph Sanberg (or a legal entity controlled by Sanberg);

2) Between March 16, 2020 (when Sanberg entered the first ██ loan based on falsified documents), and March 3, 2025 (when Sanberg was arrested);

3) Lost their money; and

1) Made claims to the government in writing or interviews that are supported by documents, records, or other evidence that possess sufficient indicia of reliability, e.g., bank statements, wire transfer records, contemporaneous correspondence, subscription or investment agreements, and other documentary evidence.

The government selected this date range following the Court's statement at the June 1 sentencing hearing that it was considering

"any impact statements that relate to the time period of the indictment," Tr. at 6, lns. 15-16, and its further comment that the Court was considering a specific victim statement because when the victim invested "the Defendant knew that he was creating false revenue through booking letters of intent as sales. He also knew at that time that he had totally fabricated bank and brokerage statements to get a loan from ███." Tr. at 32, lns. 4-7. Accordingly, the government is considering claimants to be potentially eligible if they made their investment or loan after Sanberg entered the first ███ loan -- March 16, 2020, because from that point forward Sanberg was aware that he had tied the fate of Aspiration to his own fraudulent conduct. Victims have expressed that, had they known Sanberg had committed fraud backed by his Aspiration shares, they would not have agreed to loan him money or invest with him.

Notably, the government's criteria exclude numerous restitution claims. For example, the proposal excludes individuals and entities who had only contract claims against Aspiration, such as ███████████ ███████████████████████████████████████; it excludes individuals and entities that invested in Aspiration or Sanberg's entities only in the years prior to the charged fraud scheme; and it excludes claimants who lost money by investing in ventures unrelated to Aspiration that were associated with Sanberg (e.g., Blue Apron). In excluding these claimants, the government tailors the restitution proposal to the victims in this case consistent with the guidance provided by the Court in prior proceedings.

D.     **The Restitution Proposal Is Appropriate Under the Law**

Each of the victims in the restitution proposal is appropriately deemed a victim under the MVRA. In analyzing a conviction for wire

7

fraud and the related fraudulent scheme, the Ninth Circuit held that "under the MVRA, restitution may be ordered for all persons directly harmed by the entire scheme and is thus not confined to harm caused by the particular offenses for which the defendant was convicted." United States v. Johnson, 875 F.3d 422, 425 (9th Cir. 2017) (internal citation and quotation marks omitted). The identified victims lost money – in many cases, a large proportion of their net worth – while Sanberg solicited funds with fraudulent claims or false pretenses.

Lenders who loaned Sanberg money because he lied to them and then lost their money when Sanberg defaulted are plainly victims of the scheme. Investors who purchased assets from Sanberg after seeing financial statements or valuation documents Sanberg had fabricated, like many investors in Sanberg's AGO limited partnerships, are also plainly victims. Likewise, investors in Aspiration, or purchasers of Sanberg's stake in Aspiration, who invested during the execution of the scheme were also defrauded – unsurprisingly, they lost their investments when Sanberg's house of cards came crashing down. "The court need not embark on a fact-finding mission to determine how much weight these investors attributed to [Sanberg's] misrepresentations." United States v. Sarad, 227 F. Supp. 3d 1153, 1159 (E.D. Cal. 2016).

The idea that Aspiration might have failed anyway is no defense. Sanberg caused the revenue of the company to be materially false through a complex round-tripping scheme designed to juice Aspiration's valuation, pumped the company up with investor and lender money obtained through lies, and concealed his misconduct from investors and Aspiration employees until his arrest forced an end to the charade. Where a fraud scheme relates to misrepresentations or omissions about a stock, the Ninth Circuit has held that "it is

8

reasonable to infer" that all those who purchased the stock were "duped" by the scheme. <u>United States v. Laurienti</u>, 611 F.3d 530, 557 (9th Cir. 2010).

In correspondence, counsel for Sanberg has suggested to the government that it may object to restitution for certain victims in the restitution proposal. Despite outreach and notice of the preliminary set of claims more than two months ago, the government is not presently aware of the basis for the objections. The government has endeavored to align its recommendation for restitution to the criteria of 18 U.S.C. § 3663A and the findings of the Court. At sentencing, Sanberg told the Court that he would work "as long as it takes to make full restitution." Tr. at 40, lns. 16-17. The Court should hold him to his word and order full restitution to all eligible victims.

## IV.  CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court order restitution in the amount of $323,231,279.01, to the claimants listed in Exhibit A to the Declaration of Tristan Lozano.